## GREEN JOHNSON *v.* THE STATE.

1. INDICTMENT — SERVICE OF COPY. — The word "name," in the formal introductory clause of an indictment for murder, was written "same" in the copy served upon the accused, and he objected to trial because a correct copy had not been served upon him. *Held,* that the objection was frivo-

lous; and if the discrepancy was a material one, it could not avail in the present case, because it is not shown that when the indictment was returned the accused was not on bail.

2. TECHNICALITIES. — A strict technical showing of the correctness of purely technical objections is always exacted.

3. CHANGE OF VENUE. — The credibility of a supporting witness to an application for a change of venue was attacked by the State, and the court below overruled the application. *Held*, that the ruling will not be revised by this court, in the absence of a showing that the court below abused the discretion conferred on it by law in respect of such applications.

4. CONTINUANCE. — An application for a continuance for want of a witness must show what was done with process issued for the witness.

5. SPECIAL VENIRE. — The names in the jury-box just sufficed to fill a special *venire* of thirty-six, only twenty-two of whom could be found in the county, and of them a list was duly served on the accused. To supply the deficiency, the sheriff, by order of the court, summoned fourteen talesmen; but of them no list was served on the accused. *Held*, that the accused was not entitled to a list of the talesmen summoned under such circumstances. But if the jury-box had been exhausted without filling the *venire*, and talesmen had been summoned to fill it, the accused would have been entitled to a list showing the names of the talesmen, as well as the names drawn from the jury-box.

6. JURY LAW. — To supply a deficiency in a special *venire*, the court ordered talesmen to be summoned, and then took a recess for dinner. One of the jurors who tried the case was present in court when the order was made, but was summoned in the street during the recess. *Held*, not in contravention of the provision of the jury law of 1876 prohibiting the summons of tales jurors from persons found in the court-house or yard, if procurable elsewhere.

APPEAL from the District Court of Menard. Tried below before the Hon. W. A. BLACKBURN.

This is a case of wife-murder, without a circumstance of provocation or palliation disclosed in the record. The evidence is condensed in the concluding sentences of the opinion of the court. The appellant was a soldier of the United States forces stationed at Fort McKavett, in Menard County, on the Indian frontier.

*J. D. Hill* and *R. Runge*, for the appellant.

*George McCormick*, Assistant Attorney-General, for the State.

WHITE, J. Appellant was indicted for murder committed on June 28, 1876, in the county of Menard. The party killed was his own wife, one Caroline Johnson. He was tried and convicted of murder of the first degree, with the death penalty imposed. It is from that judgment that this appeal is taken.

The first error complained of is that defendant was not served with a correct copy of the indictment in the case before trial. A copy of the copy as served upon him is made part of the transcript of the record. The difference between the copy and the original extends to but a single word, and to but a single letter of that word. Instead of beginning "In the name and by the authority of the state of Texas," etc., the copy commences, "In the *same* and by the authority," etc. In a word, by clerical inadvertence the letter " s " has been used by the clerk for the letter " n " in the original, or the construction of the first letter of the word is such as that the word can as well be taken for " same " as " name." The objection in this particular is not only hypercritical, but frivolous.

Still, it furnishes us with another opportunity of admonishing clerks of the fact that, in copying legal instruments, they cannot be too particular in making exact copies, for justice is often — too often — delayed, and trouble and expense incurred, by their failure or neglect to verify their work, after it is done, by careful comparison with the original. We cannot imagine how, in this instance, any right of the defendant was prejudiced, or any rule of law or procedure contravened. It is clear that the forms of law were endeavored to be complied with, even to the letter ; and if the letter was an " s," instead of an " n," it could have misled

no one.   The copy is correct in every other respect, and where no more substantial variance can be shown, this court will hold it, in the language of the statute, to be a " correct copy."   Pasc. Dig., art. 2930.

But the objection, had it been maintainable, should have shown (which was not done) that defendant was, at the time of the presentment of the indictment, in custody; for, if he was on bail, it was not necessary to furnish him with a copy.   Pasc. Dig., art. 2932.   In all such cases, where a defendant seeks to take advantage of mere formal or purely technical objections, he also will be held to a strict and technical showing as to the correctness of his objections.

The second error complained of is that the court refused to change the venue in the case upon the application of defendant.   The affidavit of the supporting witnesses was attacked by the impeachment of one of the affiants for credibility, and it was for the court to determine how far this had been successfully accomplished by the counter-affidavits. We cannot say that, under the facts and circumstances developed, he has, in refusing to change the venue, abused the discretion conferred upon him by law ; and, that fact not being made evident, this court will not interfere.   *Buie* v. *The State*, 1 Texas Ct. App. 452, and authorities there cited ; *Dixon* v. *The State*, 2 Texas Ct. App. 530 ; Pasc. Dig., art. 2994.

The third error complained of is that the court overruled defendant's application for a continuance.   This application disclosed no diligence.   An attachment, it is stated, was sued out for the witness McArdle, and was, on March 14, 1876, returned " not found."   This was about eleven months before the trial.   No other effort was made from that date until a day or two before the trial, when, the affidavit states, " attachments were issued for the present term of this court again, after service of copy of indictment, as

soon as could be, that is not yet returned." Where these attachments were issued to, or to whom, or to what officer they were delivered or sent, and how, we are not informed. For aught that appears, the attachment may have been sued out, and after being issued may have been retained in possession of defendant or his counsel. An application for a continuance for want of a witness must show what was done with the process issued for the witness. *Buie* v. *The State,* 1 Texas Ct. App. 452.

So far as the application refers to the other witness, Frank Fielder, for whose testimony the continuance is also sought, the same is wholly defective. It does not state the residence of the witness, or that his residence is unknown; and it does not state the facts which are expected to be proved by the witness, or make it appear that the facts expected to be proven are material. Pasc. Dig., art. 2987.

The fourth error complained of is with reference to the service of the copy of the special *venire* upon the defendant. In the bill of exceptions it is stated in the following language, viz.:

" The defendant objected to manner and form of service of special *venire* because, out of a *venire* of thirty-six men drawn, the sheriff had obtained service on only twenty-two of them, and showed by his return that no more of the thirty-six men drawn could be found in the county. The clerk of the court was sworn, and testified that there were no more names in the jury-box, and no more names of jurors drawn at the last term of this court to do jury service at the present term of this court. The court then ordered the sheriff to summons a sufficient number of talesmen to fill said *venire,* gave special instructions in regard to the qualifications of said talesmen, and ordered him not to summon them in the court-house, or about or in the court-house yard; and the defendant's counsel objected, because said talesmen had not been summoned and a copy served on him one day be-

fore the case was called for trial ; which objection was over-
ruled," etc.

The record is silent as to the number of jurors ordered
originally to be summoned, by the court, on the special
*venire.* We will presume, however, that thirty-six was the
number, since that is the minimum number allowed by law
(Pasc. Dig., art. 3016), and since that appears to have been
the number drawn from the jury-box by the clerk, and the
number of names which were placed by him upon the writ
issued to the sheriff. This, as shown by the affidavit of the
clerk, exhausted the names in the box. Now, had the
order for the *venire* been for more than thirty-six, then,
clearly, after the box had been exhausted without filling the
*venire*, it would have been the duty of the judge to have
ordered the sheriff to summon a sufficient number of tales-
men, having proper qualifications, to supply the deficiency.
Acts Fifteenth Legislature, 82, sec. 3. In that event, it
would have been the duty of the sheriff to have placed and
returned the names of the talesmen so summoned upon the
list of the special *venire*, and the defendant would have been
entitled to service of a copy of the full list so returned.
But such is not the case here presented ; there was no
deficiency in the first instance, and, consequently, no tales-
men ordered at that time. The sheriff served as many of
the jurors as could be found, and defendant was actually
served with the list so summoned and returned. Pasc.
Dig., arts. 3021, 3022. It was after the return of the sher-
iff, and service on defendant, that it was ascertained by the
court that it was necessary to summon talesmen to com-
plete the number ordered. Twenty-two out of thirty-six
had been summoned, leaving a deficiency of fourteen. In
proportion to the number of the special *venire*, we admit
that this deficit is quite large ; and the proper and better
practice, where there is a large deficiency, doubtless is to
order the talesmen, and, after they have also been sum-

moned, to then have the defendant served with the full list so completed. We know, however, of no provision of the statute requiring this to be done ; in fact, the law seems to be defective in that it provides for no such contingency. No such right being accorded to defendant, and his objection failing to show that the jury as selected, or any individual juror, was wanting in any of the qualifications prescribed by law, this court will not revise and reverse the action of the lower court in this particular, when, to say the least of it, that action was not illegal.

The following cases are cited as showing the rulings heretofore made by this court upon the procedure with reference to special *venires* in capital cases, since the adoption of the jury law of 1876 : *Swofford* v. *The State*, 3 Texas Ct. App. 76 ; *Houillion* v. *The State*, 3 Texas Ct. App. 537 ; *Harrison* v. *The State*, 3 Texas Ct. App. 558 ; and *Baker* v. *The State*, decided at the present term, *ante*, p. 223. A reference to those decisions will show the consistency and harmony of the views here expressed ; and the case of *Baker* v. *The State* is decisive of the exception taken to the particular juror, as set out in the bill of exceptions in this case.

This disposes of all the errors specially complained of. It only remains to consider the charge of the court and the sufficiency of the evidence. The charge fully and ably presented the law upon murder of the first and second degrees, and in submitting the question of murder in the second degree, it was, in our opinion, much more favorable to the defendant than the evidence as disclosed by the statement of facts warranted. The evidence is clear, positive, direct, conclusive, and unquestioned that this defendant shot and killed his own wife. No motive or excuse, much less justification, is attempted to be offered by him in extenuation or mitigation of the foul deed. As exhibited in the record, it was a most cold-blooded and deliberate murder, perpetrated solely to gratify the hellish malice of a

wretch whose heart was utterly regardless of all social duty, and fatally bent upon mischief. Having prepared himself for the deed, he coolly seated himself to await the coming of his victim. When she came out of the house, he leveled his gun upon her as she implored and begged him not to kill her; and when, seeing that he was inexorable, she turned from him and fled, he pursued and fired upon her. She did not fall at the first shot. In a moment he reloaded his gun and renewed his pursuit. Again, in most piteous accents, she begged him, for God's sake and for the sake of their child, to have mercy upon her. His only reply was, "Pray, God damn you, pray," as he fired the second shot, which struck her, mortally wounded, to the earth. In two hours she was dead.

So far as this record discloses, he has had a fair and impartial trial; and, fully concurring in the justice of the punishment awarded him by the verdict and judgment rendered in the court below, it only remains for us to declare that the judgment is, in all things, affirmed.

_Affirmed._